# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

BETTY JACKSON,                                    Case No.: 2:20-cv-02236-CSD

     Plaintiff                                    **Order**

v.                                                Re: ECF Nos. 21, 22

KILOLO KIJAKAZI,
Acting Commissioner of Social
Security Administration,[1]

     Defendant

Before the court is Plaintiff's motion for reversal and/or remand. (ECF No. 21. ) The Acting Commissioner filed a cross-motion to affirm and opposition to Plaintiff's motion. (ECF Nos. 22, 23.) Plaintiff filed a reply. (ECF No. 24.)

After a thorough review, Plaintiff's motion is denied, and the Acting Commissioner's cross-motion to affirm is granted.

## I. BACKGROUND

In November of 2017, Plaintiff completed an application for supplemental security income (SSI) under Title XVI of the Social Security Act, alleging disability beginning on June 15, 2017. (Administrative Record (AR) 170-175.) The applications were denied initially and on reconsideration. (AR 99-102, 107-109.)

Plaintiff requested a hearing before an administrative law judge (ALJ). ALJ Cynthia Hoover held a hearing on February 24, 2020. (AR 30-62.) Plaintiff, who was represented by

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Under Federal Rule of Civil Procedure 25(d), she is automatically substituted as a party for her predecessor.

counsel, appeared and testified on her own behalf at the hearing. Testimony was also taken from a vocational expert (VE). On May 6, 2020, the ALJ issued a decision finding Plaintiff not disabled. (AR 12-25.) Plaintiff requested review, and the Appeals Council denied the request, making the ALJ's decision the final decision. (AR 1-3.)

Plaintiff then commenced this action for judicial review under 42 U.S.C. § 405(g). Plaintiff first argues the final decision arose from an unconstitutional administrative process because the removal restriction on the Commissioner of the Social Security Administration (SSA) is unconstitutional.  Therefore, Plaintiff alleges relevant agency actions taken during the Commissioner's tenure were also unconstitutional. As a result, Plaintiff contends she is entitled to remand for a new hearing and administrative decision. Second, Plaintiff argues that the ALJ failed to articulate clear and convincing reasons for discounting Plaintiff's subjective complaints.

The Acting Commissioner, on the other hand, argues that Plaintiff's separation of powers argument does not entitle her to a rehearing of her disability claim, and the ALJ properly discounted Plaintiff's subjective symptom testimony.

## II. STANDARDS

### A. Five-Step Evaluation of Disability

Under the Social Security Act, "disability" is the inability to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled if his or her physical or mental impairment(s) are so severe as to preclude the claimant from doing not only his or her previous work but also, any other work which exists in the national economy, considering his age, education and work experience. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. 20 C.F.R. §404.1520 and § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). In the first step, the Commissioner determines whether the claimant is engaged in "substantial gainful activity."  If so, a finding of nondisability is made, and the claim is denied. 20 C.F.R. § 404.152(a)(4)(i), (b); § 416.920(a)(4)(i); *Yuckert*, 482 U.S. at 140. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

The second step requires the Commissioner to determine whether the claimant's impairment or combination of impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c) and § 416.920(a)(4)(ii), (c); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id*. If the claimant has an impairment that is severe, the Commissioner proceeds to step three.

In the third step, the Commissioner looks at a number of specific impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listed Impairments) and determines whether the claimant's impairment(s) meets or is the equivalent of one of the Listed Impairments. 20 C.F.R. § 404.1520(a)(4)(iii), (d) and § 416.920(a)(4)(iii), (d). The Commissioner presumes the Listed Impairments are severe enough to preclude any gainful activity, regardless of age, education or work experience. 20 C.F.R. § 404.1525(a), § 416.925(a). If the claimant's impairment meets or equals one of the Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed disabled. 20 C.F.R. § 404.1520(a)(4)(iii), (d), § 416.920(a)(4)(iii), (d). If the claimant's impairment is severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f) and § 416.920(a)(4)(iv), (e), (f). Past

relevant work is that which a claimant performed in the last 15 years, which lasted long enough for him or her to learn to do it and was substantial gainful activity. 20 C.F.R. § 404.1565(a) and § 416.920(a).

In making this determination, the Commissioner assesses the claimant's residual functional capacity (RFC) and the physical and mental demands of the work previously performed. *See id.;* 20 C.F.R. § 404.1520(a)(4)(v), § 416.920(a)(4)(v); *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). RFC is what the claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545 and § 416.945. In determining the RFC, the Commissioner must assess all evidence, including the claimant's and others' descriptions of the limitations, and medical reports, to determine what capacity the claimant has for work despite his or her impairments. 20 C.F.R. § 404.1545(a)(3) and  416.945(a)(3).

A claimant can return to previous work if he or she can perform the work as he or she actually performed it, *i.e.*, if he or she can perform the "actual functional demands and job duties of a particular past relevant job," or as generally performed, *i.e.*, "[t]he functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation marks and citation omitted). If the claimant can still do past relevant work, then he or she is not disabled. 20 C.F.R. § 404.1520(f) and § 416.920(f); *see also Berry*, 62 F.3d at 131.

If, however, the claimant cannot perform past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work available in the national economy. 20 C.F.R. §§ 404.1520(e), 416.920(e); *see also Yuckert*, 482 U.S. at 141-42, 144. This means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Gutierrez v. Comm'r of Soc. Sec. Admin.*,

740 F.3d 519, 528 (9th Cir. 2014). The Commissioner must also consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Yuckert*, 482 U.S. at 141-42. The Commissioner may meet this burden either through the testimony of a VE or by reference to the Grids.[2] *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).

If the Commissioner establishes at step five that the claimant can do other work which exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566(b), § 416.966(b). Conversely, if the Commissioner determines the claimant is unable to adjust to any other work, the claimant will be found disabled. 20 C.F.R. § 404.1520(g), § 416.920(g); *see also Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

**C. Judicial Review & Substantial Evidence**

The court must affirm the ALJ's determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Gutierrez*, 740 F.3d at 522 (citing 42 U.S.C. § 405(g)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 523-24 (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)).

To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision. *Gutierrez*,

---

[2] "[T]he grids are matrices of the four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010) (internal quotation marks and citation omitted).

740 F.3d at 524 (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The court "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). "'The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Id*. (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez*, 740 F.3d at 524 (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)). That being said, "a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards." *Id*. (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009); *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). In addition, the court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

### III. DISCUSSION

**A. ALJ's Findings in this Case**

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the application date of November 28, 2017. (AR 17.)

At step two, the ALJ concluded Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, chronic obstructive pulmonary disease (COPD), and hypertension. (AR 17.)

At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listed Impairments. (AR 19.)

At step four, the ALJ assessed Plaintiff as having the RFC to perform light work, except she can frequently balance and occasionally stoop, kneel, crouch, and climb ramps and stairs. She is never to crawl or climb ladders, ropes, or scaffolds. She must avoid concentrated exposure to temperature extremes, pulmonary irritants, and hazards such as unprotected heights and dangerous moving machinery. (AR 19.)

The ALJ then concluded Plaintiff had no past relevant work. (AR 23.)

At step five, the ALJ determined, relying on VE testimony, that considering Plaintiff's age, education, work experience and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including: Mail Clerk; Marking Clerk; and Ticket Taker. (AR 24.) As a result, the ALJ found Plaintiff has not been disabled since her application was filed on November 28, 2017. (AR 24.)

**B. Separation of Powers**

The Commissioner of SSA is appointed for a term of six years (longer than the term of the President) and may be removed from office by the President for cause ("neglect of duty or malfeasance in office"). 42 U.S.C. § 902(a)(3).

The court takes judicial notice of the fact that Andrew Saul held the office of Social Security Commissioner from June 17, 2019, until July 9, 2021, during which time the ALJ issued her decision in this matter and the Appeals Council denied review.[3]

---

[3] https://www.ssa.gov/history/commissioners.html, last visited March 9, 2022;

1    "The Constitution provides for separate legislative, executive, and judicial branches."

2  *Decker Coal Co. v. Pehringer,* 8 F.4th 1123, 1130 (9th Cir. 2021) (citing U.S Const. arts. I, II,

3  III.) Executive power is vested in the President. *Id.* (citing U.S. Const. art. II, § 1, cl. 1). The

4  Constitution does not contain an explicit clause regarding the President's power to remove

5  officers of the United States, but the Supreme Court held in *Myers v. United States,* 272 U.S. 52,

6  62 (1926), that the President has inherent, exclusive power to do so.

7    In *Seila Law LLC v. CFPB,* 140 S.Ct. 2183 (2020), the Supreme Court held that the

8  Consumer Financial Protection Bureau's (CFPB) provision for leadership by a single individual

9  who is only removable for cause violates the separation of powers because the President has the

10  power to remove an agency head at-will. 140 S.Ct. at 2197.

11    The Supreme Court subsequently held in *Collins v. Yellin,* that the Federal Housing

12  Finance Agency's (FHFA) structure, which also has a single director whom the President can

13  remove only for cause, violates the separation of powers. *Collins,* 141 S.Ct. 1761, 1783 (2021).

14  While *Seila* seemed to draw a distinction regarding the unconstitutionality of removal restrictions

15  for single-head independent agencies that wield "significant executive power," *Collins* appears to

16  have abandoned that distinction.

17    On July 8, 2021, the Justice Department's Office of Legal Counsel (OLC) issued an

18  opinion that a similar removal restriction for the SSA Commissioner violates the separation of

19  powers in light of *Seila* and *Collins*. It concluded the President may remove the SSA

20  Commissioner at will, notwithstanding the statutory removal limitation. "The Constitutionality of

21

22

23

8

1  the Commissioner of Social Security's Tenure Protection," 45 Op. O.L.C. ___, slip op. (July 8,

2  2021).[4]

3        Acting Commissioner Kijakazi agrees that 42 U.S.C. § 902(a)(3)'s removal restriction

4  on the SSA Commissioner violates the separation of powers under *Seila* and *Collins*. The Acting

5  Commissioner argues, however, that conclusion does not support setting aside an unfavorable

6  SSA disability benefits determination.

7        The court agrees with the parties that 42 U.S.C. § 902(a)(3)'s removal restriction violates

8  the separation of powers under *Collins* and *Seila*. The court must now turn to Plaintiff's

9  requested remedy: reversal and remand for a new hearing and decision. *See Seila*, 140 S.Ct. at

10  2207 ("Having concluded that the CFPB's leadership by a single independent Director violates

11  the separation of powers, we now turn to the appropriate remedy.").[5]

12        Plaintiff argues that the Commissioner delegates authority to the ALJ and Appeals

13  Council, and their actions denying Plaintiff's claim for disability benefits were completed within

14  the unconstitutional tenure of Commissioner Saul. Plaintiff contends that because of the

15  unconstitutional removal provision, Saul had no authority to delegate to the ALJ or Appeals

16  Council in this case. (ECF No. 21 at 7.)

17        The plaintiff shareholders in *Collins* similarly sought an order setting aside the third

18  amendment that was at issue in that case, asserting that it "was adopted and implemented by

19  _____

20  [4] *See*
*https://www.justice.gov/olc/file/1410736/download#:~:text=In%20that%20decision%2C%20the%20Court,5491(c)(3)*, last visited March 9, 2022.

21  [5] Plaintiff does not argue that the entirety of the legislation governing SSA is unconstitutional.
22  Under *Seila*, it appears the unconstitutional removal restriction is severable from the remainder of the provisions. *See Seila*, 140 S.Ct. at 2209-2211. The OLC opinion likewise concludes that the removal restriction does not affect the validity of the remainder of the provisions. "The
23  Constitutionality of the Commissioner of Social Security's Tenure Protection," 45 Op. O.L.C. ___, slip op. (July 8, 2021) (citing *Seila*, 140 S.Ct. at 221).

officers who lacked constitutional authority and that their actions were therefore void *ab initio*." *Collins*, 141 S.Ct. at 1787.

*Collins* concluded that there was "no reason to regard any of the actions taken by the FHFA in relation to the third amendment as void" because "[a]ll the officers who headed the FHFA during the time in question were properly *appointed*." *Collins*, 141 S.Ct. at 1787 (emphasis original). While "the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office." *Id.*

Plaintiff relies on *Lucia v. SEC*, 138 S.Ct. 2044, 2055 (2018), to support the argument that the actions of the agency are constitutionally defective when they have been completed under unconstitutional authority. (ECF No. 21 at 7.) In *Lucia*, the plaintiff challenged an administrative proceeding of the Securities and Exchange Commission (SEC) before an ALJ on grounds the ALJ was unconstitutionally *appointed* in violation of the Appointments Clause. The Supreme Court agreed. The ALJ had been appointed by *SEC* staff members, but the Appointments Clause required that ALJs had to be appointed by the President, a court of law, or the head of a department. *Luca*, 138 S.Ct. at 2050-52. The appropriate remedy in that case was a new hearing before a properly *appointed* ALJ. *Id*. at 2055.

This case is distinguishable from *Lucia*. Here, like *Collins*, but unlike *Lucia*, while the statute at issue may unconstitutionally limit the President's power to *remove* the Commissioner, there is no asserted defect in the Commissioner's *appointment,* and thus, "no reason to regard any of the actions taken by the [SSA in relation to Plaintiff's disability determination] as void." *Collins*, 141 S.Ct. at 1787. As the Court pointed out in *Collins*, *Lucia* involved an "exercise of

power that the [Government] actor did not lawfully possess," *Collins*, 141 S.Ct. at 1788 (citations omitted), but that is not the case here.

Like *Collins,* the court similarly finds that the existence of the unconstitutional removal provision alone does not justify the remedy Plaintiff seeks here. *See Decker*, 8F.4th at 1137 (noting that *Collins* is "controlling with respect to the remedy for any unconstitutional provision in the removal provisions" and the Supreme Court found undoing the agency action on the basis of the unconstitutional removal provision was unwarranted).

While the Supreme Court found there was no reason for the third amendment to be completely undone in *Collins*, it acknowledged "[t]hat does not necessarily mean … that the shareholders have no entitlement to retrospective relief." *Id*. "[I]t is still possible for an unconstitutional provision to inflict compensable harm. And the possibility that the unconstitutional restriction on the President's power to remove a Director of the FHFA could have such an effect cannot be ruled out." *Id*. The court gave two examples of when this might be the case:

> Suppose, for example, that the President had attempted to remove a Director but was prevented from doing so by a lower court decision holding that he did not have 'cause' for removal. Or suppose that the President had made a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way. In those situations, the statutory provision would clearly cause harm.

*Id*. at 1789.

The Court remanded for the lower court to resolve whether the "unconstitutional removal provision inflicted harm" *Id*.

In *Decker*, the Ninth Circuit subsequently confirmed that "the key … is demonstrating that the unconstitutional provision actually caused the plaintiff harm." *Decker*, 8 F.4th at 1137

11

1   (citing *Collins*, 141 S.Ct. at 1788-89). The Ninth Circuit concluded that "[a]bsent a showing of

2   harm, we refuse to unwind the decisions below." *Id.*

3        In her reply brief, Plaintiff argues that the delay of several months between the OLC's

4   opinion and the termination of Saul *suggests* that the President believed he could not remove

5   Saul. Plaintiff's reply also references a statement (that Plaintiff attributes to the President) that

6   Saul undermined and politicized Social Security disability benefits, reduced due process

7   protections, and took other actions contrary to SSA's mission. (ECF No. 24 at 7:13-16.) Plaintiff

8   cites a news article as the source for this statement. (ECF No. 24 at 7, n. 1.)

9        Plaintiff's speculation about the delay between the OLC memo and Saul's termination

10   does not come close to the example of specific harm the Supreme Court discussed in *Collins*.

11        Plaintiff attributes a statement of displeasure with Saul to the President.  However, the

12   new article indicates the statements came from an unidentified White House Official.[6] Plaintiff

13   has not presented evidence that the *President* expressed his displeasure with Saul, or that the

14   *President* said he would remove Saul if the statute did not stand in his way. Nor has Plaintiff

15   cited a lower court case that blocked the President's removal of Saul.

16        Moreover, Plaintiff does not identify a particular due process violation that had an effect

17   on her disability determination. Instead, she argues "[t]here is a strong *possibility* that Jackson

18   was among those who were wrongfully deprived of their due process rights[.]" (ECF No. 24 at

19   8:17-18, emphasis added.) Plaintiff does not provide evidence of any link between the

20   unconstitutional removal provision and her unfavorable disability determination. *See Decker*, 8

21   F.4th at 1138 (declining to reverse an administrative level decision when there was "no link

22

23

---

[6] *See* https://www.cnn.com/2021/07/09/politics/social-security-commissioner-fired-by-biden/index.html, last visited March 9, 2022.

1 || between the ALJ's decision awarding benefits and the allegedly unconstitutional removal
2 || provisions.").

3 ||      In sum, the court finds Plaintiff's proffer of harm is simply too tenuous.

4 ||      For the first time in her reply, Plaintiff argues that "two-layered removal" adds another
5 || constitutional defect.

6 ||      It is inappropriate to raise an argument for the first time in a reply brief. *See Cedano-*
7 || *Viera v. Ashcroft*, 324 F.3d 1062, 1066 n. 5 (9th Cir. 2003) (citing *Thompson v. Commissioner*,
8 || 631 F.2d 642, 649 (9th Cir. 1980)); *Bazuye v. INS*, 79 F.3d 118, 120 (9th Cir. 1996) (citing
9 || *Eberle v. City of Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990)). Moreover, even if this argument
10 || was raised initially, Plaintiff provides no explanation as to why two-layer removal is
11 || unconstitutional here. Plaintiff cites *Decker Coal Company v. Pehringer.*  However, the Ninth
12 || Circuit held in *Decker* that a two-layer tenure protection scheme was constitutional as applied to
13 || Department of Labor (DOL) ALJs. *Decker*, 8 F.4th at 1136.[7]

14 ||      *Decker* said even if the court concluded the two-layer protection was unconstitutional, it
15 || would only sever one layer of that protection. *Id*. (citing *Seila*, 140 S.Ct. at 2209-11). It "would
16 || *not*, however, invalidate the decision reached below." *Id*. "[W]e simply cannot conclude that the
17 || existence of [the two-layer protection] alone tainted the ALJ's decision." *Id*. at 1337. If the court
18 || accepted the plaintiff's argument that the two-layer protection was unconstitutional, "it would
19 || have potentially catastrophic effects on numerous past and ongoing claim adjudications under
20 || various benefits programs administered throughout the federal government." *Id*. Notwithstanding

21

---

22
23 [7] The two-layer removal system described in *Decker* is this: ALJs can be removed for "good cause established and determined by the Merit Systems Protection Board [MSPB] on the record after opportunity for hearing before the Board." 5 U.S.C. § 7521(a), (b). A member of the MSPB, in turn, may be "removed by the President only for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202.

1  those practical implications, the court found there was "no link between the ALJ's decision

2  awarding benefits and the allegedly unconstitutional removal provisions." *Id*. at 1138.

3          In conclusion, the court finds Plaintiff did not properly present an argument that two-

4  layer protection is unconstitutional here. And even if she had, Plaintiff has not presented any link

5  between the decision to deny benefits by the ALJ and the Appeals Council and the asserted

6  unconstitutional removal provisions. Therefore, there is no basis to reverse and remand the

7  disability determination for a new hearing.

8          In light of the court's conclusion, it need not reach the Acting Commissioner's remaining

9  arguments on this issue. Having found that the disability determination need not be reversed and

10  remanded on the basis of the separation of powers violation, the court must next determine

11  whether the ALJ erred in adjudicating Plaintiff's claim for benefits.

12  **C. Plaintiff's Subjective Symptom Testimony**

13          **1. Standard for Evaluating Subjective Symptom Testimony**

14          Evaluating a claimant's subjective symptom testimony "becomes important at the stage

15  where the ALJ is assessing residual functional capacity, because the claimant's subjective

16  statements may tell of greater limitations than can medical evidence alone." *Tonapetyan v.*

17  *Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001) (citing Social Security Ruling (SSR) 96-7P).[8]

18          "Such testimony is inherently subjective and difficult to measure." *Coleman v. Saul,* 979

19  F.3d 751, 755-56 (9th Cir. 2020). This evaluation is often crucial to a finding of disability. *Id.*

20  (citing *Fair v. Bowen,* 885 F.2d 597, 602 (9th Cir. 1989)).

21

22  _____

23  [8] SSA previously referred to this as a credibility determination. SSR 96-7P. SSA subsequently eliminated use of the term "credibility." SSA has clarified that "subjective symptom evaluation is not an examination of an individual's character." Instead, the adjudicator considers all of the evidence in evaluating the intensity and persistence of a claimant's symptoms. SSR 16-3P.

There is a two-step test for evaluating a claimant's subjective symptom testimony:

First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is *not* required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

*Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014) (internal quotation marks and citations omitted, emphasis original).

An ALJ may consider various factors in evaluating the allegedly disabling subjective symptoms, including: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken to alleviate symptoms; treatment, other than medication, received for relief of symptoms; any measures a claimant has used to relieve symptoms; and other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c), § 416.929(c); SSR 16-3P.

## 2. Plaintiff's Testimony

At the time of the hearing, Plaintiff was 51 years old and was living with her oldest daughter and her family. (AR 34-35.)

She reports her back pain wakes her up at night, and she has had to call an ambulance because she cannot move at all. (AR 45.) She has numbness in her left leg and right thigh. (AR 46.) She experiences spasms, for which she goes to the hospital to get a shot. (AR 47.) She had

1  some injections in her back, but only had relief for a few days. (AR 40-41, 48.) She takes pain

2  medications for her back, which sometimes take her pain away, though they cause her to feel

3  "woozy." (AR 40, 49.)

4          She also has pain in her hips that is worse on the right. This occurs when she sits or walks

5  for too long. (AR 49.) She has not had any treatment for her hips, other than pain medication.

6  (AR 50.)

7          She has chronic obstructive pulmonary disease (COPD) and cannot be around chemicals.

8  She has been trying to quit smoking, but at the time of the hearing, she was smoking five to six

9  cigarettes a week. The COPD causes shortness of breath when walking up or down stairs or if

10  she walks too far. She uses three inhalers. (AR 51-52.) She also has high blood pressure. (AR

11  58.)

12          She reports that she cannot bend or stoop. (AR 46.) She can sit for about 30 minutes but

13  has to keep moving back and forth because of her back pain. (AR 53-55.) She can stand for about

14  30 minutes, but if she stands for too long, her right hip will hurt. (AR 55.) After standing for that

15  long, she will try to walk a little or find somewhere to sit. It will take about 10-15 minutes before

16  she can get back into standing position again. (AR 55-56.) She was unsure how much weight she

17  could lift, but said she would have difficulty lifting with her left arm because she has pins in that

18  arm from her shoulder to her elbow and from her elbow to her wrist. (AR 58.)

19          She is able to cook a little bit. She testified that her family takes care of the dishes,

20  laundry and grocery shopping.  However, she stated in her adult function report that she feeds

21  her grandchildren, does her own laundry and some dishes, and shops for personal things once a

22  month. She watches movies with her sisters and goes out to play bingo. She goes to church

23  occasionally with her daughter. Every once in a while, she will braid hair. She watches

television, helps her grandchildren with books or puzzles. (AR 42-44, 196-198.) She can get

dressed while sitting down; otherwise, her granddaughter will help her. (AR 47.)

**3. Analysis**

The ALJ found that Plaintiff's medically determinable impairments could reasonably be

expected to cause the alleged symptoms.  However, the ALJ found Plaintiff's statements

concerning the intensity, persistence and limiting effects of these symptoms were not entirely

consistent with the medical evidence and other evidence in the record. (AR 20.) Therefore, the

court must determine whether the ALJ set forth specific, clear and convincing reasons for

discounting Plaintiff's subjective symptom testimony.

**a. Noncompliance with Treatment**

The ALJ found that Plaintiff's medical records showed evidence of noncompliance with

treatment. On December 28, 2018, she was discharged from pain management for

noncompliance. Her pain management doctor noted that three times in the last year, he had

referred her for a lumbar spine evaluation, which continually got rescheduled. The ALJ found

this noncompliance undermined the persuasiveness of the allegations, because if an individual

was as debilitated as alleged, the person would follow doctor's orders, hoping for improvement

or relief.  (AR 21.)

The ALJ also mentioned that Plaintiff's doctors regularly discussed smoking cessation

with her as well as the risks of smoking, but Plaintiff testified that she continued to smoke. The

ALJ found this undermined the persuasiveness of Plaintiff's allegations. Nevertheless, this

condition was accounted for in the RFC. (AR 21.)

Plaintiff argues the ALJ did not fully develop the record by asking Plaintiff why she was

not compliant with treatment.

"A claimant's subjective symptom testimony may be undermined by an 'unexplained, or inadequately explained, failure to … follow a prescribed course of treatment. While there are any number of good reasons for not doing so, a claimant's failure to assert one, or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony.'" *Trevizo v. Berryhill,* 871 F.3d 664, 679-80 (9th Cir. 2017) (quoting *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)). Both *Trevizo* and *Fair* place the onus on the claimant to proffer a reason for failing to follow the prescribed course treatment. Plaintiff has not done so here. Therefore, the court finds this is a specific, clear and convincing reason for discounting Plaintiff's subjective symptom statements.

**b. Improvement with Medication**

The ALJ said that Plaintiff's doctor noted her medications were providing benefit and allowed her to function at a higher level. Plaintiff also reported her pain was controlled by, and relieved with, medication. Her doctors noted they prescribed her medications because she continued to obtain pain relief with minimal side effects using those medications. (AR 21.)

Plaintiff argues that the record does not reflect that Plaintiff was symptom free while taking her medications.

The ALJ does not state that Plaintiff was symptom free while taking her medication.  The ALJ pointed out that Plaintiff was still experiencing symptoms, while also noting that her medications provided a benefit, relieved some of her pain, and allowed her to function at a higher level. This is consistent overall with the medical records. Between 2016 and 2018, Plaintiff reported 35%, 40 %, 65% and 75% pain relief, and her provider continually indicated that she had relief with minimal side effects. (AR 288-91, 292-94, 296-98, 303, 305-07, 310, 313-15, 379, 375-78, 381, 466, 475-78, 479-81, 483-86, 488-91, 492-95, 499.) There are also notations

1  that muscle relaxers helped her (AR 420) and that her COPD was controlled with her inhalers

2  (AR 353).

3        The court finds this to be a clear and convincing reason for discounting Plaintiff's

4  subjective symptom testimony.

5              **c. Objective Medical Evidence**

6        The ALJ found that Plaintiff's subjective symptom testimony was not supported by the

7  objective medical evidence.

8        Plaintiff argues this cannot be the sole reason for discounting Plaintiff's testimony.

9        The ALJ noted that imaging failed to establish limitations beyond those assessed in the

10  RFC and discussed each of the imaging findings. In addition, the ALJ said that physical exam

11  findings did not corroborate Plaintiff's allegations of disability. The ALJ said the notes

12  documented that Plaintiff exhibited tenderness to palpation of the lumbar spine, decreased range

13  of motion of the lumbar spine, pain with facet loading, and positive straight leg raise test

14  bilaterally.  However, Plaintiff also had normal sensation, reflexes and strength in the bilateral

15  lower extremities. Her gait was steady. The ALJ found these findings supported the limitations in

16  the RFC to a light exertional level with additional postural limitations. The ALJ also discussed

17  that Plaintiff's records generally documented normal respiratory findings with respect to her

18  COPD.

19        Plaintiff is correct that an ALJ "may not discredit the claimant's subjective complaints

20  *solely* because the objective evidence fails to fully corroborate the degree of pain alleged."

21  *Coleman,* 979 F.3d at 756 (emphasis added, citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir.

22  1998)); *see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2011). Here, the ALJ did not

23  discount Plaintiff's subjective symptom testimony based *solely* on the objective medical

evidence. The court has found that the ALJ gave other clear and convincing reasons, including her noncompliance and improvement with medications. Therefore, this also qualifies as a clear and convincing reason for the ALJ's subjective symptom testimony determination.

### d. Daily Activities

Finally, the ALJ said Plaintiff described daily activities are not limited to the extent one would expect given her complaints of disabling symptoms. The ALJ noted that Plaintiff helped care for grandchildren with things including feeding and dressing them; she spent time with her grandchildren watching television, reading books and doing puzzles; she washed dishes, she did her own laundry, she prepared meals and shopped for groceries; she went to her sister's house to watch movies and went out to play bingo; and she occasionally went to church and braided hair. (AR 22.)

Plaintiff argues that the ALJ failed to adequately explain how Jackson's activities translate into the ability to perform work full time on a sustained basis.

"Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) (citations omitted). This is if "a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Id*. (citation and quotation marks omitted). A claimant need not be "utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment  where it might be impossible to rest periodically or take medication." *Smolen,* 80 F.3d at 1287 n. 7; *see also Fair*, 885 F.2d at 603. House chores, cooking simple meals, and occasional shopping are not similar to typical work responsibilities. *Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017). "Recognizing that 'disability claimants should not

be penalized for attempting to lead normal lives in the face of their limitations,' we have held that '[o]nly if [her] level of activity were inconsistent with [a claimant's] claimed limitations would these activities have any bearing on [her] credibility.'" *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

The ALJ did not describe how Plaintiff's ability to engage in these limited activities is transferable to a work setting, or specifically explain how these activities were inconsistent with her claimed limitations. Therefore, the ALJ erred on this issue.

The error, however, is harmless because the ALJ set forth other clear and convincing reasons for discounting Plaintiff's subjective symptom testimony, and the ultimate credibility determination is adequately supported by substantial evidence in the record. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (citing *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)). Here, as in *Carmickle* and *Batson*, the ALJ considered Plaintiff's testimony and provided other specific reasons for discounting her subjective symptom testimony. In addition, the ALJ did not completely reject Plaintiff's allegations, but instead found the alleged extent of her statements inconsistent with other evidence in the record, and the ALJ took her symptoms into account in determining her RFC.

### 4. Conclusion on Subjective Symptom Testimony

The ALJ set forth several clear and convincing reasons for discounting Plaintiff's subjective symptom testimony; therefore, Plaintiff's motion for reversal and/or remand on this basis is denied, and the Acting Commissioner's cross-motion to affirm is granted.

/ / /

/ / /

## IV. CONCLUSION

Plaintiff's motion for reversal and/or remand (ECF No. 21) is **DENIED,** and the Acting Commissioner's cross-motion (ECF No. 22) is **GRANTED.** The Clerk shall enter **JUDGMENT** accordingly.  **IT IS SO ORDERED.**

Dated: March 10, 2022

Craig S. Denney
United States Magistrate Judge

22